UNITED STATES DISTRICT COURT                    <u>ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                            :
DERRICK HATCHER,                            :        MEMORANDUM
                                            :        <u>AND ORDER</u>
                         Petitioner,        :
                                            :
           -against-                        :        10-CV-782 (JG)
                                            :
PHILIP D. HEATH,                            :
                                            :
                         Respondent.        :
-----------------------------------------------------------------X

A P P E A R A N C E S:

           DERRICK HATCHER,
                 # 06-A-6297
                 Upstate Correctional Facility
                 309 Bare Hill Road
                 P.O. Box 2001
                 Malone, NY 12953
                 *Petitioner*, pro se

           CHARLES J. HYNES
                 District Attorney
                 Kings County
                 350 Jay Street
                 Brooklyn, NY 11201
           By:   Judith C. Aarons
                 Shulamit Rosenblum Nemec
                 Leonard Joblove
                 *Attorney for Respondent*


JOHN GLEESON, United States District Judge:

           Derrick Hatcher, a prisoner incarcerated at Upstate Correctional Facility, petitions

for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from a judgment of the New

York State Supreme Court, Kings County.  After a jury trial, Hatcher was convicted of first-

degree attempted robbery and fourth-degree criminal weapon possession.  Appearing *pro se*,

Hatcher contends, among other things, that the evidence against him was insufficient and that the trial judge erred in his instructions to the jury. Oral argument, at which Hatcher appeared by videoconference, was heard on July 8, 2010. For the reasons set forth below, the petition is denied.[1]

BACKGROUND

A.    *The Offense Conduct*

The evidence at trial established the following series of events. In late November 2006, Gilford Burry was walking on a street in Brooklyn when he came upon Hatcher. Hatcher offered to sell Burry cell phones, CD players, and a pair of Nike Air Jordans. Burry declined the offer.

Late on December 5, 2005, Burry finished work at the CVS store on 9th Street in Park Slope and took the A Train towards his home in Crown Heights. After getting off the subway, he went to the window of a bodega at the intersection of Nostrand Avenue and Atlantic Avenue, roughly a block away from where he had first encountered Hatcher, to buy some mints. According to Burry, just after he bought the mints, he felt a hard object in his lower back. When he turned around, he saw Hatcher holding a screwdriver. Hatcher said "give me some money, I need some money." Tr. 30-31.[2] Burry testified at trial that Hatcher made a jabbing motion with the screwdriver and said "you wanna feel this?" Tr. 34-35, 47.

---

[1]    As discussed below, *see infra* Discussion Section B.3, I stayed Hatcher's habeas petition in August 27, 2010, to allow him to exhaust certain claims raised in state court pursuant to N.Y. Crim. P. L. § 440. Those claims have now been exhausted. By letter dated September 23, 2011, Hatcher seeks a further stay so that he may pursue additional unspecified claims in yet another § 440 proceeding. Hatcher also requests that I order polygraphs to be taken of him and Gilford Burry, the victim of the crime underlying the conviction Hatcher now challenges. Both requests are denied.

[2]    In this opinion, "Tr." refers to the trial transcript, and "S." refers to the transcript of the sentencing proceedings.

Burry refused to comply with Hatcher's demand, saying "I don't want to fight with you, I want to go home, I'm tired." Tr. 34-35. Hatcher blocked Burry's path to a nearby phone box, and the two men continued arguing while several bystanders looked on. After a few minutes, Police Officer Robert Smith and his partner arrived at the scene. Smith, who testified at trial that he saw Hatcher holding an object as he approached the two men, arrested Hatcher and recovered a screwdriver from his front jacket pocket.

B.      *The Procedural History*

On December 23, 2005, Hatcher was indicted by a King's County grand jury on charges of first-degree attempted robbery, third-degree attempted robbery, fourth-degree attempted grand larceny, attempted petit larceny, and criminal possession of a weapon in the fourth degree.

1.      *The Trial*

The trial began on October 16, 2006. The government called Burry and Smith to testify. At the conclusion of the prosecution case, the defense moved to dismiss the case "based on the fact that [the People] have not made out a prima facie case." Tr. 81. The judge denied the motion. The defense offered no case, but renewed its motion to dismiss on the ground that "they haven't made out a case beyond a reasonable doubt as a matter of law." Tr. 86. Again, the motion was denied.

At the close of evidence, the judge asked the parties whether either side had a specific request to charge. Hatcher's attorney replied "No." Tr. 82. After a brief discussion of the counts the jury would be asked to consider, the judge asked the lawyers whether they had "any other questions about the charge." Tr. 85. Hatcher's attorney raised no questions.

The judge charged the jury on the presumption of innocence in the following fashion:

> Throughout these proceedings the defendant is presumed to be innocent. As a result, you must find him not guilty unless on the evidence presented at this trial today you conclude that the People have proven the defendant guilty beyond a reasonable doubt.
>
> The defendant is not required to prove or to disprove anything. The burden of proof remains only and always upon the People. The People have the duty to prove the defendant guilty beyond a reasonable doubt. That means that before you can find the defendant guilty of any crime submitted to you today, you must be satisfied that the People have proven beyond a reasonable doubt every element of that crime and that the defendant is the person who committed that crime.
>
> The burden of proof never shifts from the People to the defendant. If the People fail to satisfy their burden of proof, you must find the defendant not guilty. Conversely, if the People do not satisfy their burden of proof, you must find the defendant guilty.[3]

Tr. 122-23.

In addition, the charge outlined the elements of all five crimes charged in the indictment. Twice, the judge made mistakes as to the names of the offenses. First, when instructing the jury on attempted robbery in the third degree, the judge referred once to robbery in the fourth degree, a non-existent crime under New York law. Tr. 132. Second, in the course of instructing the jury on attempted grand larceny in the fourth degree, the judge referred at one point to grand larceny in the first degree. Tr. 134. Hatcher's attorney did not call the court's attention to these errors.

On October 17, 2006, the jury found Hatcher guilty of attempted robbery in the first degree and criminal possession of a weapon in the fourth degree. It was therefore

---

[3] As discussed below, it is evident that the last quoted sentence contains either a verbal slip by the judge or transcription error.

unnecessary for the jury to decide whether Hatcher was guilty of third-degree attempted robbery or fourth-degree attempted grand larceny.

The parties returned for sentencing on November 6, 2006. At the outset of the sentencing proceedings, Hatcher's counsel noted that he had not moved to set aside the verdict at the end of the trial, and, without elaboration, asked the judge for that form of relief "for the record." S. 3. The motion was denied. Justice Heffernan adjudicated Hatcher a persistent violent felony offender and sentenced him to the minimum punishment: concurrent prison terms of 16 years to life for the attempted robbery conviction and one year for the weapon possession conviction. When asked at sentencing whether he admitted to committing the predicate felony offenses, Hatcher answered, "Yeah."

2.    *The Direct Appeal*

Hatcher appealed from the judgment of conviction to the Appellate Division, Second Department. His counseled brief argued that the evidence at trial failed to prove that he was guilty beyond a reasonable doubt and that the verdict was against the weight of the evidence. The defense theory at trial and on appeal was that the interaction between Hatcher and Burry was a dispute over money that Burry owed Hatcher, not an attempted robbery. In support of this argument, the brief contended that Burry's testimony was not credible and was contradicted by Smith's recollections of what Burry said at the scene. In particular, the brief pointed out that, in contrast to Burry's trial testimony, Burry told Smith that Hatcher had followed Burry along the street before the altercation. Additionally, Burry told Smith that he was still in line to make a purchase at the bodega window when Hatcher approached him, and that Hatcher had said "you owe me" money. Tr. 44. Moreover, the brief pointed out that there were three or four people outside the bodega while the supposed robbery was under way, that none of them seemed

concerned, and that one of them said "excuse me, I want to use the window, I want to make a purchase."  Tr. 37.  Given these inconsistencies, the counseled brief contended that the conviction could not stand.

Hatcher also filed a *pro se* supplemental brief with the Appellate Division.  The supplemental brief purported to call attention to errors in the jury instructions, arguing: (1) that the trial court's instruction on the presumption of innocence was inadequate; and (2) that the trial court confused the jury by instructing them on crimes not included in the indictment.  Hatcher conceded that his trial counsel had not objected to the jury charge.

The Appellate Division denied all these challenges in a decision dated December 9, 2008.  *People v. Hatcher*, 868 N.Y.S.2d 537 (2d Dep't 2008).  The counseled brief's argument that the evidence was insufficient was held unpreserved for appellate review because Hatcher "made only a general motion to dismiss the indictment and did not elaborate with specific facts or grounds the basis for dismissal."  *Id.* at 538.  In any event, the court rejected the challenge on the merits.  *Id.*  Hatcher's *pro se* submissions were also determined to be procedurally barred because his trial counsel did not object to the jury charge.  *Id.*  Again, the Appellate Division went on to consider and reject the arguments on their merits anyway, finding that "the [trial] court's charge, when read as a whole, fairly instructed the jury on the principles of law to be applied to the case."  *Id.*  Accordingly, the court affirmed the judgment of conviction.

On March 2, 2009, a judge of the New York Court of Appeals denied Hatcher's motions[4] for leave to appeal to that Court.  *People v. Hatcher*, 12 N.Y.3d 784 (2009) (Pigott, J.).

---

[4]     Hatcher's attorney moved for leave to appeal the denial of the counseled claims, and Hatcher himself moved for leave to appeal the rejection of his *pro se* claims.

3.     *The State Collateral Attack*

While the instant petition was pending, Hatcher filed a motion in Kings County Supreme Court to vacate the judgment of conviction in state court pursuant to New York Criminal Procedure Law § 440, asserting that he received ineffective assistance of counsel at the trial and that he was subjected to an erroneous sentencing determination when he was adjudicated a persistent violent felony offender.  On July 8, 2010, at Hatcher's request, I deemed his habeas petition amended to include these two unexhausted claims.  On August 27, 2010, I stayed Hatcher's habeas petition and held it in abeyance pursuant to *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001) and *Rhines v. Weber*, 544 U.S. 269 (2005) to allow Hatcher to exhaust his claims.

Hatcher's § 440 petition was denied on January 13, 2011.  (Resp. Letter, Ex. A at 1, 7-11, Sep. 22, 2011, ECF No. 36-1; Resp. Letter, Sep. 23, 2011, ECF No. 36.)  The court held that Hatcher's ineffective assistance of counsel claim was procedurally barred, as Hatcher could have, but did not, raise it in his direct appeal.  *See* N.Y. Crim. P. L. § 440.10(2)(c) (§ 440.10 motion must be denied where issue was unjustifiably not raised on appeal).  The court also found the claim meritless.  Hatcher's claim was premised on two arguments.  The first was that his counsel failed to object to the allegedly improper jury instructions.  The § 440 court cited the Appellate Division's conclusion that the instructions were not improper and held that trial counsel was not ineffective for failing to make an argument with little chance of success.  Second, Hatcher claimed that his trial counsel's failure to investigate and subpoena three witnesses constituted ineffective assistance.  The court noted that Hatcher had provided no supporting facts concerning the identity of these witnesses.  It concluded that Hatcher's vague

argument about the three missing witnesses was insufficient to establish ineffective assistance where trial counsel "apparently made appropriate motions, argued at the suppression hearing, and mounted a vigorous defense."

In his second claim, Hatcher argued that the sentencing court erroneously adjudicated him a persistent violent felon by attributing to him prior felonies that he had not committed. The § 440 court denied this claim in light of prison records evidencing that an individual with tattoos identical to those of Hatcher and determined by the Department of Correctional Services to be Hatcher had been convicted and incarcerated for at least two previous qualifying felony convictions within the statutory period, and the persistent violent felony offender determination was therefore not erroneous.

On June 21, 2011, a judge of the Appellate Division denied Hatcher leave to appeal the denial of his § 440 motion. (Resp.'s Letter, Ex. A at 3, Sept. 22, 2011, ECF No. 36-1.)

## DISCUSSION

A.      *Standard of Review*

1.      *Review of Procedurally Defaulted Claims*

Section 2254(b) of Title 28 of the United States Code prevents a federal court from granting a petition for a writ of habeas corpus unless the petitioner first has exhausted all available state judicial remedies. In order to have exhausted those remedies, a petitioner must have "fairly presented" his federal constitutional claim to the state courts by apprising them of "both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). When a claim in a habeas petition

has not been exhausted, but there are no remaining procedures available in state court for the petitioner to exhaust his claim, the petitioner will not be required to engage in a futile attempt to exhaust the claim in state court. *See, e.g., Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003). In such cases, the federal court is required to treat the claim as procedurally defaulted. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001); *Sweet*, 353 F.3d at 140.

Furthermore, where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed*, 489 U.S. 233, 261 (1989); *see also Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001) (state court's reliance must be "unambiguous and clear from the face of the opinion"); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (noting the state's interests in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct its own errors"). *But see Lee v. Kemna*, 534 U.S. 362, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

A claim that has been procedurally defaulted in state court generally cannot be reviewed on the merits by a federal habeas court. *Harris*, 489 U.S. at 260-62 (explaining rationale for habeas corpus procedural default rule); *Coleman*, 501 U.S. at 750. However, there are two circumstances in which a federal claim that has been procedurally defaulted – or deemed procedurally defaulted due to the exhaustion requirement – will nonetheless be reviewable on a federal petition for habeas corpus. First, a petitioner is entitled to review of a procedurally

defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable." *Coleman*, 501 U.S. at 753 (quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (quotation marks omitted).

Second, even if the petitioner is unable to show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22 (quotation marks omitted).

2.      *Review of State Court Adjudications on the Merits*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or

10

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[5]  In addition to the deference owed to state court determinations of fact under § 2254(d), subsection (e) requires that a federal habeas court presume all state court factual determinations to be correct.  The petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).  A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*  "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent

---

[5]      This limitation on relief is referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411).  Elaborating on this standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see also id.* at 786-87 (a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it gives reasons for its determination or refers to federal law in its decision.  *See Richter*, 131 S. Ct. at 785; *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.      *The Sufficiency and Weight of the Evidence at Trial*

Hatcher's petition asserts that the evidence at trial was legally insufficient to support the judgment of conviction.[6]  In the alternative, Hatcher also argues that the jury's verdict was against the weight of the evidence.

---

[6]      Hatcher concedes that the evidence might be sufficient to convict him of some lesser crime, such as misdemeanor menacing.

1. *The Sufficiency of the Evidence*

To Hatcher's claim that the evidence introduced at trial was legally insufficient, the respondent replies that the claim fails on an independent and adequate ground. Though Hatcher's trial counsel moved to dismiss the indictment at the conclusion of the government's case, again after the defense rested and a third time post-verdict, and explicitly argued that the evidence was insufficient, the Appellate Division determined that these motions did not suffice to preserve the argument for appeal. Because I conclude that the sufficiency-of-the-evidence claim fails on its merits, it is unnecessary for me to rule on respondent's dubious argument that it is procedurally barred.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case by requiring proof beyond a reasonable doubt of every element of the crime with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). A state prisoner is entitled to federal habeas relief if there was not "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 312. In assessing the legal sufficiency of the evidence, a reviewing court must consider the evidence in the light most favorable to the prosecution, crediting every inference that the jury might have drawn in favor of the prosecution, and may disturb the conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319.

A person is guilty of first-degree attempted robbery under New York law where he attempts forcibly to steal property, and "during course of the commission of the crime … he uses or threatens the immediate use of a dangerous instrument." N.Y. Pen. Law §§ 110.00 & 160.15(3). Viewed in the light most favorable to the government, the evidence was more than

sufficient for a rational fact-finder to determine that Hatcher was guilty of first-degree attempted robbery. If one credits Burry's testimony, as I must for these purposes, Hatcher threatened to use the screwdriver against Burry unless Burry gave him money. The screwdriver is plainly a "dangerous instrument" as defined by New York Penal Law § 10.00(13), which includes any "instrument, article or substance … which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury."

Hatcher's case differs significantly from *People v. Mateo*, 786 N.Y.S.2d 671 (3d Dep't 2004), to which Hatcher refers in his reply submissions. In that case, the defendant placed the victim in a headlock and threw him to the ground, saying "Don't move. You know what this is." *Id.* at 672. Though the victim assumed that by "this," the defendant meant to convey that he was being robbed, the Appellate Division held that there was insufficient evidence that the assault was committed for the purpose of stealing any property belonging to the victim. On that basis, the court set aside Mateo's conviction for attempted robbery. But in Hatcher's case, there was ample evidence for a jury to find an intention to steal: Burry testified that Hatcher demanded money while wielding a screwdriver.

Additionally, the evidence was sufficient to support the jury's verdict that Hatcher was guilty of fourth-degree criminal possession of a weapon. A person is guilty of that offense "when he possesses … any … dangerous or deadly instrument or weapon with intent to use the same unlawfully against another." N.Y. Pen. Law § 265.01(2). Again, Burry's testimony supports a finding that Hatcher possessed the screwdriver, a dangerous instrument, with the intention of using it unlawfully against Burry by threatening him with violence.

14

In attacking the sufficiency of the evidence, Hatcher points out certain inconsistencies in Burry's testimony, pointing in particular to contradictions between what Burry said at trial and the statement he made to Smith in the immediate aftermath of the incident. Many of these inconsistencies were explored at trial.[7]  As noted above, however, "[t]he jury is exclusively responsible for determining a witness'[s] credibility," *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994), and, at least to the extent necessary to find Hatcher guilty, the jury resolved the credibility dispute in Burry's favor.

2.    *The Weight of the Evidence*

Hatcher also renews his argument that the jury's verdict was contrary to the weight of the evidence.  A New York state appellate court may reverse or modify a conviction if the court determines that the jury's verdict "was, in whole or in part, against the weight of the evidence."  N.Y.C.P.L. § 470.15(5).  By way of contrast to a sufficiency-of-the-evidence claim, the state court considering the weight of the evidence has the power to set aside a guilty verdict where it determines that the evidence against the defendant is not credible.  *See People v. Bleakley*, 69 N.Y.2d 490, 495 (1987).  The argument that the jury's verdict was contrary to the weight of the evidence, however, does not raise a question of federal due process, and is not cognizable on a habeas petition.  *See, e.g., Young v. Abrams*, 698 F.2d 131, 135 (2d Cir. 1983).  Accordingly, Hatcher's challenge to the weight of the evidence against him provides no basis for relief from the judgment of conviction.

---

[7]    At least one of the alleged inconsistencies is raised by Hatcher for the first time on this petition. Burry testified that, prior to the incident with Hatcher, Burry walked from Park Slope to Hoyt Street and took the A train from there to Nostrand Avenue.  Hatcher contends that this statement shows that Burry is lying, because the A train does not stop at the subway station officially designated "Hoyt Street," where only the 2 and 3 trains stop.  The A train, however, does stop at the nearby Hoyt-Schermerhorn station, and it is apparent that Burry was referring to that station.

C.      *The Jury Charge*

Hatcher's challenges to the jury charge face an initial barrier. Respondent contends that they are procedurally barred because they were not made to the trial court, and I agree. Hatcher's counsel made no objection to the charge and did not request any curative instruction. New York's criminal procedure rules require a contemporaneous objection by defense counsel to any alleged legal error at a criminal trial. N.Y. Crim. P. Law § 470.05(2); *see Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003), and the Appellate Division relied on that rule in affirming the judgment of conviction.[8] The preservation rule constitutes an independent state law ground for rejecting Hatcher's challenges to the jury charge. *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007). Hatcher makes no attempt to argue that the preservation rule is inadequate to prevent federal collateral review, and there is no indication that the state's assertion of the procedural bar was "exorbitant" as applied to this case. *See Cotto*, 331 F.3d at 239.

In any event, as explained below, each of Hatcher's challenges to the jury charge fails on the merits to make out a violation of any of his constitutional rights.

1.      *The Adequacy of the Presumption of Innocence Charge*

Hatcher characterizes the judge's instruction to the jury on the presumption of innocence as a "bare bones" charge, and contends that the charge violated his constitutional right to due process because it "minimized the significance of the presumption of innocence." Pet'n 8. Having reviewed the judge's instruction to the jury, I conclude that it cannot fairly be described

---

[8]      A state court's holding that a claim is both unpreserved and without merit constitutes reliance on an independent state law ground. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision); *cf. Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000) (claims are not procedurally barred where state court states that they are "either unpreserved for appellate review *or* without merit") (emphasis added).

as "bare bones."  Indeed, for this portion of his charge, the judge read directly from New York's official Criminal Jury Instructions.  *See* Criminal Jury Instructions 2d (New York).  The judge instructed the jury that Hatcher was presumed innocent throughout the proceedings, and that as a result the jury "must" find him not guilty unless the government proved him guilty beyond a reasonable doubt.  The judge also said that Hatcher was not required to prove or disprove anything, that the People had the duty to prove Hatcher guilty beyond a reasonable doubt, and that the burden of proof never shifted to Hatcher.

Hatcher does point out an apparent error at the end of the judge's instructions on the presumption of innocence, the burden of proof, and the requirement of proof beyond a reasonable doubt.  The judge is reported to have said: "If the People fail to satisfy their burden of proof, you must find the defendant not guilty.  Conversely, if the People do not satisfy their burden of proof, you must find the defendant guilty."  Tr. 123.  Evidently, in the second of the quoted sentences, the judge intended to say, in accordance with the official Criminal Jury Instructions, "if the People satisfy their burden of proof, you must find the defendant guilty."

In challenging the jury instructions on habeas review, Hatcher must carry a heavy burden.  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment."  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).

Hatcher has not cleared this high threshold.  Assuming the transcript is accurate, the judge's slip of the tongue came at the end of a lengthy charge explaining in several different ways the presumption of innocence, the location of the burden of proof, and the standard of proof that the prosecution was required to meet.  The question "is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process." *Id.* at 147.  In making this determination, a court "must consider the challenged portion of the charge not 'in artificial isolation,' but rather 'in the context of the overall charge.' " *Justice v. Hoke*, 45 F.3d 33, 34 (2d Cir.1995) (quoting *Cupp*, 414 U.S. at 146-47).  Here, I conclude that there is no possibility that the jury was misled about the burden of proof, and that this objection to the jury instructions is without merit.

2. *The Mistakes in the Charge as to the Names of Offenses*

The petition asserts that the judge denied Hatcher his constitutional right to due process by instructing the jury on crimes with which he was not charged.  On two occasions during the charge, the judge misspoke the names of the offenses, referring (a) to robbery in the fourth degree rather than the third degree, and (b) to grand larceny in the first degree instead of the fourth degree.

Again, Hatcher's arguments do not establish that the jury instructions violated his constitutional rights.  The judge correctly instructed the jurors on the elements of the offenses, and accurately named the relevant offenses on eight occasions during the charge, including three times after the mistakes.  Tr. 125-26, 128, 131-34, 138.  Moreover, given its finding that Hatcher was guilty of attempted robbery in the first degree, it was not necessary for the jury even to reach the mislabeled charges, further reducing the minuscule possibility that any momentary confusion

18

affected the jury's verdict in any way.  In these circumstances, the judge's mistakes far fall short of a constitutional due process violation, and provide no basis for habeas relief.[9]

D.  *The Effectiveness of Trial Counsel*

Hatcher claims that his trial counsel provided ineffective assistance when he failed to challenge the allegedly improper jury instructions, and when he failed to investigate and subpoena three witnesses.  The § 440 court denied the motion on a valid procedural ground in light of Hatcher's unexplained failure to raise the claim on direct appeal.  The claim is procedurally defaulted, and since Hatcher has not made a showing of cause and prejudice or of actual innocence, the claim is not subject to federal habeas review.  The claim also fails on the merits.

To make out an ineffective assistance claim, Hatcher must demonstrate that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  The state court found that Hatcher had not made the requisite showings, and its determination did not constitute an unreasonable application of the *Strickland* standard.   As discussed above, the jury instructions were adequate.  Trial counsel's failure to object to them did not constitute ineffective

_____

[9]      In his reply submissions, Hatcher also alludes to the Second Circuit's decision that New York's discretionary persistent felony offender statute, N.Y. Pen. L. § 70.10, is violates the Sixth Amendment.  *See Besser v. Walsh*, 601 F.3d 163 (2d Cir. 2010), *en banc rehearing granted sub nom. Phillips v. Artus*, No. 06-3350.  Hatcher, however, was sentenced pursuant to the mandatory persistent violent felony offender statute, N.Y. Pen. L. § 70.08, which was not at issue in the *Besser* case.  *See Besser*, 601 F.3d at 170 n.5.  Because the sentencing enhancement under the § 70.08 is based solely on the fact of the defendant's prior convictions, it falls within the exception to the Sixth Amendment right to have a jury determine any fact that increases the maximum sentence available for the crime.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998).  Besides, the decision in *Besser* was subsequently reversed by the entire court.  *Portalatin v. Graham*, 624 F.3d 69 (2d Cir. 2010).

assistance.  *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999).  Nor is Hatcher's

unsubstantiated claim about missing eyewitnesses sufficient to overcome the "strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance[.]"  *Strickland*, 466 U.S. at 689.  This court must assume that trial counsel's failure to

interview and subpoena the unnamed witnesses was "sound trial strategy," and Hatcher has

failed to overcome that presumption.  *Id*.

E.      *The Persistent Violent Felony Offender Determination*

Finally, Hatcher contends that non-existent convictions were attributed to him at

sentencing and that he was wrongfully adjudicated a persistent violent felony offender.  The §

440 court found that Hatcher had committed two previous qualifying felony convictions within

the statutory period, and that the sentencing court's determination was therefore correct.  Hatcher

does not challenge this conclusion as a matter of law; he calls into question only the factual

finding that he committed the predicate offenses.

I may grant Hatcher relief on this claim only if the state court's decision "was

based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d).  In addition, I must presume that the state court

factual determinations are correct and place the burden on Hatcher to rebut the presumption by

clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Under either standard, Hatcher's claim

fails.  As observed by the § 440 court, the documentary evidence that Hatcher committed the

predicate offenses is "difficult to refute."  Hatcher's own sworn statements at the sentencing

procedure further undermine his claim for habeas relief, which is accordingly denied.

## CONCLUSION

For the reasons stated above, the petition for habeas corpus is denied. No certificate of appealability shall issue because Hatcher has not made a substantial showing that he was denied a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

So ordered.

John Gleeson, U.S.D.J.

Dated:          October 4, 2011
                Brooklyn, New York